**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHN BURDA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:10-cv-00985** |
| | ) | **Judge Campbell** |
| **DAVID SEXTON, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# M E M O R A N D U M

## I.  INTRODUCTION AND PROCEDURAL HISTORY

The petitioner, John Burda,[1] has filed a *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2254.  (Docket No. 1).  The petitioner is an inmate at the Northeastern Correctional Complex (NECX) in Mountain City, Tennessee.  The petitioner challenges the legality of his confinement under an August 2, 2006, judgment of the Dickson County Circuit Court convicting him of one count of solicitation of a minor and twenty-one counts of especially aggravated sexual exploitation of a minor.  (Addendum 8, pp. 692-94).[2]  At a sentencing hearing conducted on August 30, 2006, the trial court merged the twenty-one convictions of especially aggravated sexual exploitation into seven counts and sentenced the defendant to an effective term of twenty-two years. (Addendum 9, pp. 96-97, 102).

---

[1]  Throughout this memorandum, John Burda is referred to as "petitioner," "defendant," and "appellant" interchangeably.

[2]  The citations herein are to the technical record filed by the respondent.  (Docket No. 13).  Addenda Nos. 11-13 were filed manually by the respondent due to their graphic content.  (*See* Docket Annotation 1/18/2011).

On May 4, 2009, the Tennessee Court of Criminal Appeals affirmed the defendant's convictions but reduced the sentences and remanded the case for corrected judgments reflecting a total effective sentence of sixteen years. *State v. John Jason Burda*, No. M2006-02523-CCA-R3-CD, 2009 WL 1181349 (Tenn. Crim. App. May 4, 2009); Addendum 16. The Tennessee Supreme Court denied the petitioner's application for permission to appeal on November 23, 2009. *Id.*

On October 18, 2010, the petitioner filed a *pro se* petition for a writ of *habeas corpus* in this court. (Docket No. 1). In his petition, the petitioner asserts five grounds for relief. (Docket No. 1 at p. 5). The petitioner names David Sexton, the warden of NECX, as the respondent.

Upon its receipt, the court conducted a preliminary examination of the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, the court entered an order on October 26, 2010, directing the respondent to answer or otherwise respond to the petition. (Docket No. 4). The respondent filed a response urging the court to deny the petition and dismiss the action. (Docket No. 9). The petitioner filed a reply in opposition to the respondent's motion to dismiss. (Docket No. 15). The petitioner also filed a "Motion to Withdraw Respondent's Habeas Corpus Defenses." (Docket No. 14).

Upon consideration of the record, the court concludes that an evidentiary hearing is not needed in this matter as to grounds two through five of petitioner's *habeas* petition. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Therefore, the court shall dispose of the petition as to those grounds as the law and justice requires. Rule 8(a), Rules — § 2254 Cases. If the court subsequently determines that an evidentiary hearing is needed with respect to ground one, an appropriate order will enter.

Jurisdiction and venue in this court are appropriate under 28 U.S.C. § 2241(d) because the petitioner was convicted in the Circuit Court of Dickson County, Tennessee.

## II.    UNDERLYING FACTS OF CRIMINAL CONVICTIONS

The following is taken from the opinion of the Tennessee Court of Criminal Appeals in *State v. John Jason Burda*, 2009 WL 1181349, at **1-3:

> Defendant was convicted of one count of solicitation of a minor and twenty-one counts of especially aggravated sexual exploitation of a minor. Defendant and the victim communicated via the internet for a period of approximately two years. The charges at issue, however, concern only the time period of July 1, 2004 through September 30, 2004. During this time the victim took pictures of herself and sent them over the internet to Defendant. The pictures consisted of the victim in various states of undress and depicted the victim masturbating.

> On September 20, 2004, Sergeant Roger Jackson of the King Police Department in King, North Carolina contacted the North Carolina State Bureau of Investigation for assistance in a case involving an adult male in Tennessee (later determined to be Defendant) and a minor, E.B. (the victim will be referred to by her initials), in North Carolina. According to the victim, she and Defendant, whom she knew as "Jason," had been communicating via telephone and computer for approximately two years. During the latter part of these two years, the victim sent Defendant numerous pictures of herself in various states of undress and engaging in masturbation.

The victim provided Sergeant Jackson with three photographs Defendant had sent her of himself, a list of screen names and email addresses he had used, and his home telephone number. After receiving consent from the victim's parents, Sergeant Jackson took the victim's computer to the North Carolina State Bureau of Investigation so that it could undergo a forensic investigation. Special Agent Gary R. Cullop received the computer from Sergeant Jackson and performed the forensic investigation. Special Agent Cullop testified that he requested several administrative subpoenas be issued to America OnLine (AOL) and BellSouth in order to determine the identity of the person with the screen names provided by the victim. The administrative subpoenas also requested information as to login dates and Internet Protocol (IP) addresses. The information received from the administrative subpoenas, as well as information provided by the victim, led to the confirmation of the identity of Defendant. Once Special Agent Cullop knew the name and address of the person who the victim had been corresponding with, he accessed the National Criminal Information Network through this network, and he obtained a copy of Defendant's driver's

license. Special Agent Cullop then contacted the Tennessee Bureau of Investigation and spoke with Special Agent Tom Davis. After speaking with Special Agent Davis and determining that there was likely evidence on Defendant's computer that violated Tennessee law, Special Agent Cullop faxed a statement of the facts of the case to Special Agent Davis. Special Agent Cullop then contacted Special Agent Joe Craig who was located in Dickson County in order to determine if he was familiar with the area and knew where Defendant lived. Special Agent Cullop testified that he also sent copies of the victim's computer hard drive to Investigator Buddy Tidwell of the Dickson County District Attorney's Office.

Special Agent Craig testified that he was first contacted by Special Agent Davis regarding Defendant. Davis gave Craig the statement from Cullop along with the copies of the administrative subpoenas and phone records. Craig then contacted Cullop and determined that they were looking for chat logs with the victim and images from Defendant's computer. Craig then contacted Investigator Buddy Tidwell for his assistance in the forensic examination of the computer, as well as two sheriff's deputies and two police officers to assist in the search. Craig testified that they determined the residence belonged to Defendant because of the phone and IP records and because his photograph on his driver's license matched one found on the hard drive of the victim's computer. Defendant's home was located in Dickson County and prior to obtaining the search warrant, Special Agent Craig drove by the residence. Once Craig obtained the search warrant, he, Investigator Tidwell, two uniformed officers, and two sheriff's deputies went to Defendant's house. The officers served the search warrant and seized Defendant's computer, several floppy disks, cameras, and other items.

Investigator Tidwell performed the forensic examination on the computer. He testified that all the images listed in the indictment were accessed by Defendant's computer the day before the search warrant was served and Defendant was arrested. Investigator Tidwell also testified that some of the images listed in the indictment were saved to floppy disks recovered from Defendant's home. Investigator Tidwell recovered numerous chat logs from Defendant's computer. The chat logs consisted of conversations between the victim and Defendant. Investigator Tidwell was able to determine that, during the chats, the victim had sent some photographs, although he was unable to determine what photographs she sent. By examining the computers, Investigator Tidwell was able to determine the creation dates (when they were created by the victim) of the images at issue.

The victim's mother Teresa Burton testified that her daughter began chatting on the internet with Defendant shortly after they moved from

West Virginia to North Carolina. Ms. Burton testified that she listened in on phone calls between Defendant and her daughter and believed Defendant to be sixteen years old. The victim was thirteen when these conversations began. In the summer of 2004, the victim became withdrawn and disturbed. In September of 2004, the victim told her mother about the conversations she had been having with Defendant and the fact that she had discovered that Defendant was in his fifties, not sixteen as she believed. Ms. Burton later saw the images the victim had sent to Defendant. Ms. Burton and her husband then decided to call the FBI and it was decided to have the victim e-mail Defendant telling him she would not be able to talk to him for four to six weeks.

The victim testified that she and Defendant began chatting online in May or June of 2002 when she logged into a chat room and said that she was thirteen years old and bored. Defendant told her he was sixteen years old. The victim stated the conversations began with them talking about general things, like her family's move to North Carolina, school, and animals. The romantic relationship between Defendant and the victim began in May of 2003. The victim stated that she was in love with Defendant and that Defendant told her that he loved her. When the victim was fifteen the relationship turned sexual. Although she and Defendant never physically met, they had numerous sexual conversations both online and on the telephone. The victim also sent Defendant pictures of herself engaging in masturbation as well as pictures of her vagina, her bra, and her breasts.

The victim testified that the sexual conversations began with Defendant inquiring about her sexual history. She stated that he wanted to know what sexual activities she had engaged in and with whom. She also stated that Defendant was very controlling and

wanted her to report her daily activities to him. She stated that she and Defendant would role play in their sexual conversations and his favorite was to pretend he was her father and that their sexual relationship was incestuous. The victim also downloaded child pornography and sent it to Defendant. Defendant would ask the victim to mimic certain pictures and send them to him, which she did. In July of 2004, Defendant instructed the victim to take a picture of herself while inserting a hairbrush into her vagina. The victim testified that Defendant had sent her several pictures of girls inserting hairbrushes into their vaginas and told her that it was "sexy." Most of the photographs were made using a "pin camera" that Defendant told her to buy. In July of 2004, Defendant told the victim that he wanted "live shows" and sent her a web cam to attach to her computer. The victim stated that she performed sexual acts for Defendant via the web cam.

The victim learned Defendant's actual age in July or August of 2004. She was told that he was not the age he told her by Defendant's friend, Mark. When she confronted Defendant about his age, he became "upset." The victim testified that they spoke on the phone for an hour and Defendant was furious with her and threatened to tell her mother about the pictures she had sent him. On cross-examination, the victim admitted that she had sent some of the pictures to Defendant without him clearly asking for them. However, she stated that she would never have sent any pictures without him asking her to and telling her what to send. She testified that he told her when you love someone you send these types of pictures to them.

The exhibits presented at trial consisted of chat logs between the victim and Defendant and several pictures of the victim's genitals, breasts, buttocks, and pictures of her masturbating.

(Addendum 16).

## III.    ANALYSIS

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial.  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## A.   Claim of Judicial Misconduct (Ground One)

As ground one of his petition for *habeas corpus* relief, the petitioner contends that he was denied a fair hearing and trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution because the trial court judge was biased against him, improperly assuming the role of prosecutor and intervening during the course of the trial to ensure that the state had adequately proved its case.  (Docket No. 1 at pp.5-8).

### 1.        Exhaustion

The respondent contends that the petitioner has failed to fully exhaust this claim and therefore the claim should be summarily dismissed.  (Docket No. 10 at pp.7-9).  However, the petitioner maintains that the issue of judicial misconduct was raised in his appellate brief to the

Tennessee Court of Criminal Appeals when the appellant argued that there was insufficient evidence to support his convictions.  (Docket No. 3 at pp. 15, 20).

A review of the petitioner's appellate brief reveals that, on pages sixty-one (61) and sixty-two (62), the appellant (now petitioner) raised as "Issue XII:  The evidence was not sufficient to convict the Appellant.  Further, the Court erred by interfering with the State's proof and pointing out to the State the holes in its case."  (Docket No. 13-11 at pp. 63-64, Addendum 14).  Following the quoted heading, the appellant then goes on to set forth his theory in greater detail:

> There was not sufficient proof as to even when the images were created and therefore it may have been outside of the time frame of the indictment.  The Trial Court even realized this and stopped the state from closing its proof so as to attempt to save the State's case.  *This was inappropriate involvement by the trial judge* and allowed the state to recall a witness to try to save its case.

(*Id*. at p. 64)(emphasis added).  In its response to the petitioner's *habeas corpus* petition (Docket No. 10), the respondent does not address the fact that this argument appears in the petitioner's appellate brief.

A federal district court will not entertain a petition for writ of *habeas corpus* unless the petitioner has first exhausted all available state remedies for each claim in his petition.  28 U.S.C. § 2254(b).  While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Consequently, as a condition precedent to seeking federal *habeas corpus* relief, the petitioner is required to fairly present his claims to every available level of the state court system.  *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).  Once his federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that

court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990). In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also Adams v. Holland*, 324 F.3d 838, 841-44 (6th Cir. 2003).

Both the factual and legal basis for the claim must have been presented to the state courts in order to be considered "fairly presented." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). The Sixth Circuit has identified four actions that a petitioner can take which are significant to the determination of whether he has properly asserted both the factual and legal bases for his claim, i.e., "fairly presented" that claim:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005)(quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

The court finds that, in his appellant brief to the Tennessee Court of Criminal Appeals, the petitioner gave the state a full and fair opportunity to rule on the petitioner's allegations of judicial misconduct prior to filing the instant petition for federal *habeas corpus* relief. For a due process challenge to the sufficiency of the evidence, under § 2254(d)(1), a writ of *habeas corpus* may be granted if the court concludes that "'no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Tennessee Court of Criminal Appeals reviewed the appellant's sufficiency of evidence claim within the context of which the

judicial misconduct allegations were alleged and determined that there was sufficient evidence to sustain his convictions. *See State v. Burda*, 2009 WL 1181349, at *6. For unknown reasons, the appellate court elected not to address the judicial misconduct claim directly. However, the appellate's court citation to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), within its analysis of the petitioner's sufficiency of evidence claim indicates that the appellate court understood the appellant's claim to have federal constitutional implications. The appellant argued on direct appeal that, when the trial judge realized the state had not proven all of the essential elements of the crimes with which the defendant was charged, the trial judge improperly intervened and directed the state as to how to proceed. This argument fits squarely within a due process challenge to the sufficiency of the evidence. Thus, the court finds that the petitioner satisfied the exhaustion requirement as to his claim of judicial misconduct in violation of his due process rights by raising the claim in his brief to the Tennessee Court of Criminal Appeals on direct appeal. A petitioner is not required to present to the state court every specific fact which he presents to the federal court. *Harris v. Lindamood*, No. 3:02-0021, 2007 WL 1047631, at *34 (M.D. Tenn. March 30, 2007).

Where, as here, the state court did not assess the merits of a claim properly raised in a *habeas* petition, the deference due under the AEDPA does not apply, and the court is obliged to resolve this claim *de novo* in addressing its merits. *See Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001).

### 2.  Merits of Judicial Misconduct Claim

The Due Process Clause of the Fourteenth Amendment requires a fair trial tribunal before a judge with no actual bias against a defendant or an interest in the outcome of the case. *Burnett v. Bell*, No. 2:08-cv-11901, 2010 WL 2089335, at *6 (E.D. Mich. May 24, 2010)(citing *Bracy v.*

*Gramley*, 520 U.S. 899, 904-05 (1997)). There are two types of judicial misconduct claims. The first type is "judicial bias" stemming from a trial judge's personal interest in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties. *Id.* (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). That type of judicial misconduct or bias is not alleged here. The second type concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which strongly suggests that the judge believes the defense or favors the prosecution. *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). This is the type of claim alleged by the petitioner in ground one of his *habeas corpus* petition. The petitioner's specific contention is that he was denied a fair trial:

> because there was a breakdown of the adversarial nature of the trial mechanism, or trial process[,] by the actions of the trial court judge in stopping the trial process, stopping the state from closing its proof, ruling in substance that the evidence was insufficient to convict, then allowing the state to continue, acting as a surrogate prosecutor to point the 'holes' or defects in the state's case, allowing the state to call additional witnesses after it was ready to close its proof . . . .

(Docket No. 15 at p. 14).

To violate a defendant's right to a fair proceeding, the judge's intervention in the case must be "significant and detrimental to the defendant to a substantial degree." *Burnett*, 2010 WL 2089335, at *6 (citing *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985)). However, "[t]here is no general prohibition against a trial court commenting upon the evidence." *McBee v*, 763 F.2d at 817 (citing *Quercia v. United States*, 289 U.S. 466, 469 (1933)). "'Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction.'" *Id.* at 818 (quoting *Brinlee v. Crisp*, 608 F.2d 839, 853 (10th Cir. 1979)). In collateral proceedings such as the instant case, the test is "'whether the errors alleged

. . . could have rendered [the] trial fundamentally unfair.'" *Id.* (quoting *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978)).  The petitioner alleges that the trial judge's intervention was both significant and detrimental; indeed, the petitioner maintains that the trial judge's misconduct rendered his trial in Dickson County Court "fundamentally unfair" such that it violated the Constitution.

The court finds that the allegations by the petitioner state a colorable claim of judicial misconduct.

Because the Tennessee Court of Criminal Appeals elected not to address this claim, this court will be the first court to rule on the claim of judicial misconduct.  The respondent has not submitted argument to the court with regard to the merits of this claim.  Prior to ruling on the merits of ground one of the petitioner's *habeas corpus* petition, the court needs a full briefing by both parties.  The respondent shall file its brief on the judicial misconduct claim within thirty (30) days of entry of the contemporaneous order.  The petitioner shall file any reply brief on the judicial misconduct claim within thirty (30) days of receipt of the respondent's brief.

**B.    Use of Perjured Testimony (Ground Two)**

As ground two of his petition for *habeas corpus* relief, the petitioner contends that his conviction "was obtained through the use of perjurious/false testimony."  (Docket No. 1 at p.9).

**1.    Exhaustion**

The respondent contends that this claim should be summarily dismissed because the petitioner has failed to fully exhaust this claim, having not raised it at any point on direct appeal.  (Docket No. 10 at pp. 9-10).  The petitioner, however, maintains that he raised the issue of perjured

testimony, specifically that of the victim/accomplice E.B.[3] contributing to the petitioner's lack of a fair trial, in his appellate brief to the Tennessee Court of Criminal Appeals.   (Docket No. 15 at p. 8).

Although in his appellate brief the appellant pointed out alleged discrepancies in E.B.'s trial testimony and argued that her testimony had been discredited on cross-examination, these arguments were made in the context of the appellant's arguments that certain evidence should have been suppressed (issues IV and VII), that an acquittal was required "based upon the State's failure to corroborate the testimony of the accomplice/witness" (issue VII), and that there was insufficient evidence to sustain the appellant's convictions (issue XII).   At no point, however,  in his appellate brief did the appellant specifically or even generally allege that he was denied a fair trial due to the introduction of or use of perjured testimony.   As such, the court cannot find that the petitioner has fully and fairly presented this particular federal claim to the state courts for consideration.   Thus, the petitioner has never exhausted this federal due process claim arising from alleged perjury.

At this time, the state court remedies for this claim are no longer available.   *See* Tenn. Code Ann. § 40-30-102(a) and (c).   Therefore, by way of procedural default, the petitioner technically has met the exhaustion requirement with respect to this claim.   *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal *habeas corpus* review).

### 2.    Procedural Default:   Cause and Prejudice

---

[3] This court, as did the state courts, will refer to the victim/accomplice by her initials because she was a minor at the time of the alleged events.   The court also will refer to E.B. as "victim/accomplice" because the trial court determined that, as a matter of law, she was both victim and accomplice to the defendant's crimes.   Although the Tennessee Court of Criminal Appeals did not consider the matter directly, the court referred to E.B. as both victim and accomplice throughout its opinion. *See State v. Burda*, 2009 WL 1181349, at **10-11 (Tenn. Crim. App. May 4, 2009).

The exhaustion of a claim via procedural default does not, however, automatically entitle a *habeas* petitioner to federal review of that claim. To prevent a *federal habeas* petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

A *habeas* petitioner cannot rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. *Brooks v. Tenn.,* 626 F.3d 878, 890 (6th Cir. 2010).

In his response to the respondent's motion to dismiss his *habeas corpus* petition, the petitioner points to his attorney's failure to follow his directions as the reason or "cause" for the petitioner's failure to exhaust ground two in the state courts. The petitioner claims that he "wrote numerous letters to his defense and appellate counsel regarding the . . . use of perjurious/false evidence . . . . There was not even one response from appellate counsel as to these letters. Petitioner clearly expressed his concern as to whether these issues were adequately developed to the state courts. Petitioner cited numerous federal and state citations of law on the topics." (Docket No. 15 at p.15). The petitioner argues that, if the court determines that a procedural bar exists to ground

two of his *habeas* petition, his counsel is responsible for the default, and the court should not punish the petitioner for his attorney's error. (*Id*. at pp. 15-16).

Even assuming *arguendo* that the petitioner has established cause, the court finds that the petitioner cannot establish prejudice as to this claim. The petitioner alleges that the prosecutor knowingly used, and the trial judge knowingly allowed, perjured testimony by E.B. to obtain convictions against him. However, to prevail on a due process claim that a conviction was obtained by evidence that the government knew or should have known to be false, a *habeas* petitioner must show that the witness's statements were "indisputably false," that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or changes his story does not establish perjury. *Monroe v. Smith*, 197 F. Supp.2d 753, 762 (E.D. Mich. 2001).

Here, the testimony that the petitioner alleges was perjured involved some inconsistencies in the victim/accomplice's testimony on direct and cross-examination. This allegation is insufficient to establish the knowing use of perjured testimony. As discussed more fully *infra*, the verdict indicates that the jury clearly credited E.B.'s testimony on direct examination, notwithstanding the inconsistencies in her testimony elicited by defense counsel during his zealous cross-examination of E.B. Thus, the petitioner cannot show that E.B.'s alleged perjury infected his trial with constitutional error so as to establish prejudice sufficient to overcome the petitioner's procedural default of ground two. *See Monroe v. Smith,* 197 F. Supp.2d at 763 (where witness's testimony at pretrial examination differed from trial testimony, the presentation of a witness who may have

contradicted herself did not deprive petitioner of due process where the jury heard all of the versions of the witness's stories; "It was for the jury to decide which version of the testimony to believe."). Consequently, the court finds that this claim will not support an award of *habeas corpus* relief.

### 3.      No Certificate of Appealability shall issue as to ground two.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability  "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's second ground for relief.

## C.      Claim of Insufficiency of Evidence  (Ground Three)

As ground three of his petition, the petitioner alleges that the evidence was insufficient to support his convictions for one count of solicitation of a minor and seven counts of especially aggravated sexual exploitation of a minor.  (Docket No. 1 at p. 9).

### 1.      Exhaustion

The respondent concedes that the petitioner has exhausted this claim.  (Docket No. 10 at p. 11).

### 2.      Merits

 The Tennessee Court of Criminal Appeals considered the petitioner's sufficiency of

evidence claim in its opinion. *State v. Burda*, 2009 WL 1181349, at *6; Addendum 16.[4]  Therefore,

this court must presume the correctness of the state court's factual determinations.  28 U.S.C. §

2254(e)(1).  The petitioner may rebut this presumption only with clear and convincing evidence.

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

On sufficiency of the evidence challenges, *habeas* relief is warranted "only where the court

finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker

v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)(internal quotation omitted); *see also Jackson v. Virgina*,

443 U.S. 307, 319 (1979)("after reviewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt")(emphasis in original).

At the time of the petitioner's offenses, especially aggravated sexual exploitation of a minor

was codified in Tennessee Code Annotated section 39-17-1005(a) (2003) as:

> It is unlawful for a person to knowingly promote, employ, use,
> assist, transport, or permit a minor to participate in the performance
> or in the production of material which includes the minor engaging
> in: (1) Sexual activity; or (2) Simulated sexual activity that is patently
> offensive.

"Promote" was defined as meaning "to finance, produce, direct, manufacture, issue, publish, exhibit,

or advertise." Tenn. Code Ann. § 39-17-1002(5).   The definition of "sexual activity" included all

of the following acts:

---

[4]  The Tennessee Court of Criminal Appeals noted that the petitioner had not challenged his conviction for solicitation of a minor, but the appellate court determined that there was sufficient evidence to sustain that conviction. *Id.*

(A) Vaginal, anal or oral intercourse, whether done alone or with another human or an animal:

(B) Masturbation, whether done alone or with another human or an animal;

(C) Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks or breasts in an act of apparent sexual stimulation or sexual abuse;

(D) Sado-masochistic abuse including flagellation, torture, physical restraint, domination or subordination by or upon a person for the purpose of sexual gratification of any person;

(E) The insertion of any part of a person's body or of any object into another person's anus or vagina, except when done as a part of a recognized medical procedure by a licensed professional;

(F) Patently offensive, as determined by contemporary community standards, conduct, representation, depictions or descriptions of excretory functions; or

(G) Lascivious exhibition of the female breast or the genitals or pubic area of any person.

Tenn. Code Ann. § 39-17-1002 (2003).

### a.    Images of a sexual activity or simulated sexual activity

In considering the petitioner's insufficiency of evidence claim in its opinion, the Tennessee Court of Criminal Appeals began by recounting that the defendant had been convicted by the jury of twenty-one (21) counts of especially aggravated sexual exploitation of a minor, and that the trial court later had merged several of those counts into three counts and left three counts to stand alone based on the dates that the photographs were created.  The remaining counts were Counts 2, 7, 9, 11, 19, and 22, the six offenses that the jury found occurred on separate dates between July 13 and 24, 2004.  2009 WL 1181349, at *10.   The court then determined:

We have examined the photographs in Counts 2, 7, 9, 11, 19, and 22, which depict the victim's breasts, genitals, buttocks, and her masturbating with her fingers and a hairbrush. It is clear that they [the photographs] contain images of sexual activity or simulated sexual activity and support convictions for sexual exploitation of a minor.

2009 WL 1181349, at *7.

The petitioner does not appear to take issue with this portion of the jury's or appellate court's findings. The court has examined the photographs and likewise concludes that the photographs in Counts 2, 7, 9, 11, 19, and 22 contain images of sexual activity or simulated sexual activity as those terms are described in Tenn. Code Ann. § 39-17-1002 (2003). Therefore, the court finds that the state court's determination to this effect was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### b. Knowing promotion of a minor to participate in the production of material depicting sexual activity or simulated sexual activity

Continuing in a methodical manner and citing the applicable code provision, the Tennessee Court of Criminal Appeals then considered whether the defendant "knowingly promote[d] . . . a minor to participate in the . . . production of [the] material . . . ." 2009 WL 1181349, at **7-8. This element is the heart of the petitioner's instant sufficiency of evidence challenge.

Reviewing the evidence admitted at trial, the appellate court first noted that the victim/accomplice had testified that the petitioner "often asked for photographs of her in various positions, using various items to masturbate. She testified that he would tell her to insert vegetables or fruits into her vagina and take pictures of the act and send them to him. During one conversation, Defendant told the victim, "[I] want a pic of that hairbrush in [yo]ur pussy." *State v. Burda*, 2009 WL 1181349, at *3; *see* Addendum 11, Ex. 42, p. 33 of 65. The appellate court noted that, "[w]hile

the chat log does not show the picture that was sent, it does reflect that a photograph was sent. Defendant then states, 'cool . . . put in your pussy . . . and turn it on for the next pic, ok?' Once again that chat log reflects that a picture was sent." *Id;* Addendum 11, Ex. 42, p. 51 of 65. The court then noted that "[t]his conversation occurred on July 23, 2004, which is the date the jury found to have been the date the hairbrush image (Count 2) was produced." *Id.* The appellate court also cited specifically to another chat conversation in which the defendant told the victim to send him a picture of her breasts out of her bra, which is reflected in Count 9. *Id.* The appellate court found that E.B.'s testimony and the physical evidence established that the defendant "knowingly promoted" the production of the hairbrush and breast images (Counts 2 and 9).

The appellate court conceded that the record "does not clearly show that Defendant asked for each photograph that the victim sent." *Id.* However, the appellate court unequivocally found that the record "does show that he [the defendant] manipulated her [E.B.] into sending *all of them*." (*Id.*)(emphasis added). The appellate court explained this "grooming" theory:

> The proof demonstrates that Defendant spent a significant amount of time building an online relationship with the victim. The victim testified that she and Defendant, whom she believed to be 16, eventually confessed their love to one another and that Defendant told her that she could trust him. She stated Defendant was very controlling, and he told her that "people in love they will do anything for each other and that includes sending these pictures." The victim testified that she would have never sent any pictures without him asking and telling her what to send. A majority of the photographs were made with a "pin camera" that Defendant had instructed her to buy. The circumstantial evidence is sufficient to prove that Defendant promoted the victim's production of these photographs.

*State v. Burda*, 2009 WL 1181349, at **7-8; Addendum 16.

The petitioner makes much of the fact that, on cross-examination, E.B. was confronted with the transcript of a chat between herself and a friend known in the chat room by the name "dork

vader." (Addendum 7, pages 164-65 of 267, Trial Ex. 35). During that chat, E.B. told "dork vader" that she had sent the defendant pictures of her vagina. (*Id*.) She stated: "yeah it was my idea – just one day I up and said, 'speaking of pics, how would you like some of my cunt?'" (*Id*.) "[D]ork vader" responded in the chat by saying, "I wonder what got into you," to which E.B. replied, "you don't know me" and "I'm like that a lot." (*Id*.) According to the petitioner, E.B.'s conflicting testimony on direct and cross examination prove that it was E.B. who "promoted" the images, not the petitioner, since she admitted that it was her idea to send pictures of her vagina to Mr. Burda in the first place.

"On a state prisoner's habeas petition challenging the insufficiency of the evidence," such as in the instant case, the court "must draw all available inferences and resolve all credibility issues in favor of the jury's verdict." *Rodriguez v. Trombley,* No. 2:06-cv-11795 , 2010 WL 120222, at *14 (E.D. Mich. Jan. 8, 2010). Because "[a]ttacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence," *id.* at *15, an assessment of the credibility of witnesses is therefore generally beyond the scope of federal *habeas* review of sufficiency of evidence claims. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)(on *habeas* review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial). It is the province of the fact finder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A *habeas* court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

Here, the jury had the opportunity to consider E.B.'s testimony given on direct examination as well as her testimony elicited by defense counsel on cross-examination. The jury accepted E.B.'s

testimony that she would not have sent any of the pictures without the defendant having asked for them, and this court will not second guess the jury's credibility determination. *See Boyles v. Sherry*, No. 2:06-cv-12207, 2008 WL 4793412, *12 (E.D. Mich. Oct. 31, 2008). The court on *habeas* review must defer to the jury's findings, made beyond a reasonable doubt, that E.B.'s testimony and the physical evidence supported the prosecution's charges.

Given the testimony adduced at trial and the images and voluminous chat logs introduced into evidence, the court finds that the Tennessee Court of Criminal Appeals' decision to reject the petitioner's insufficiency of evidence claim was not an unreasonable application of the law. To the extent that the petitioner challenges the jury's assessment of E.B.'s testimony presented at trial and the weight to be accorded to certain pieces of evidence, he is not entitled to relief. The Supreme Court has cautioned that "habeas corpus is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams*, 529 U.S. 362, 383.

Nor has the petitioner shown that the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Taylor*, 529 U.S. 362, 387 (2000). The record contains multiple images of the victim in sexually explicit poses dated between July 13-24, 2004. (*See e.g.*, Addendum 11, Trial Exs. 15 (Count 7), 17 (Count 9), 19 (Count 11), 27 (Count 19), 30 (Count 22)). The record also contains hundreds of pages of transcribed chat log conversations occurring within the time frame of the indictment in which the defendant *directly* requests or encourages E.B. to produce images of herself in sexually explicit poses. For example, on July 25, 2004, E.B. asks the defendant during an online chat if he wants "any pics right now." (Addendum 12, Ex. 40, page 49).

The defendant replies, "yes I do," to which E.B. asks, "of what?" (*Id*.) The defendant responds, "show me some tits." (*Id*.) The chat log reflects that an image was then sent, and the defendant wrote, "gosh those look nice" and "I wish those were in my face right now." (*Id*. at p.50). In another chat log, E.B. asks the defendant, "u want a pic?" to which he replies, "sure, why wouldn't I?" The evidence reflects that, during that same chat, E.B. sent images to the defendant of her vagina and her unbuttoned blouse showing her breasts. (Addendum 12, Ex. 46, page 2) Yet another example is on August 5, 2004, when, during a chat conversation, the defendant tells E.B. to "turn around and bend over like that, hands on ur knees." He then says, "nice, I like that, I want a pic like that, I want a side view too, lift up that shirt." Later in the chat, he asks, "will u take some pics like that tonight?" and she asks, "like what?" and he says, "of that bald pussy? Let me see it again too." She responds, "ok, ok I let you see it" and he replies, "yeah u did." (Addendum 12, Ex. 48)(pages not numbered in Exhibit).

These and other chat logs introduced into evidence during the defendant's trial also show that the defendant also *indirectly* promoted the production of these images by complimenting E.B. when she sent such images. E.B. testified that "there would be comments about all of the photographs" and that she "would be encouraged to make more photographs," (Docket No. 13-7, pp. 81-82 of 267), which is consistent with the physical evidence in the case. For example, in the chat conversation occurring on July 25, 2004, the defendant comments: "that is really hot," "I like it a lot," "that is outstanding," and asks, "can u do with both titties out of the bra like that?" (*Id*. at pp. 3-4); Addendum 12, Ex. 46, pp. 3-4.

It is clear that the defendant requested a number of sexually explicit pictures from E.B. within the time frame of the indictment. During this time, the defendant, who was actually in his

fifties, led E.B. to believe he was a teenage boy. Regardless of whether E.B. created and sent some images to the defendant on certain dates without the defendant having specifically requested those images, it is also clear that the defendant did not object to the production or receipt of these images; indeed, he praised and complimented E.B., who was fifteen years old at the time, for taking the pictures and sending them to him. He encouraged E.B. to create and send more photographs. He suggested different sexually explicit poses. The court finds that the defendant's behavior over a period of years was designed to cultivate a relationship with this young woman for the purpose of manipulating her into creating and sending sexually explicit images to a grown man for his sexual gratification. As did the appellate court, this court finds that the defendant's actions, both direct and indirect, "knowingly promoted" the victim/accomplice's production of this material.

In conclusion, the court finds that the appellate court properly applied the law and reasonably concluded that the evidence was sufficient such that a reasonable trier of fact could have found the defendant guilty of especially aggravated sexual exploitation of a child in Counts 2, 7, 9, 11, 19, and 22.

### 3. No Certificate of Appealability shall issue as to ground three.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's third ground for relief.

**D.  Denial of the Motion to Dismiss the Indictment (Ground Four)**

As ground four of his *habeas* petition, the petitioner alleges that his "[c]onviction was obtained by an invalid indictment.  Alternately [sic], the State's proof at trial resulted in an amendment of the indictment."  (Docket 1 at p. 25).

**1.  Exhaustion**

The respondent concedes that the petitioner has exhausted this claim.  (Docket No. 10 at p. 11).

**2.  Merits**

Prior to his trial, the trial court considered and denied a motion by the petitioner to quash the indictment based on a material variance from the proof presented to the grand jury and the proof presented at trial.  (Docket No. 13-5, Addendum 5).   The defendant claimed that he would be tried without satisfaction of his constitutional right to the presentment of his case to a grand jury.  (*Id*.) The defendant alleged that, of one-hundred (100) photographs, the prosecutor did not know which photographs the grand jury used as a basis for the indictments against the defendant.  (*Id*. at pp. 7-9). During a hearing on the defendant's motion, the prosecutor stated he had been assigned the case after the death of the previous assistant district attorney and that he had examined the photographs in the file and personally had chosen twenty-three to correspond to the twenty-three counts on which the grand jury indicted the defendant.  The prosecutor conceded that he had "no idea" whether the particular photographs he selected had been presented to the grand jury.  (Addendum 5, pp. 5-6). Defense counsel then argued to the trial court:

> The state can't proceed forward just by choosing pictures – 22
> pictures of a 103 pictures, and proceed forward on those; and the
> grand jury may have rejected some of these.  We don't know.
> There's no record.  There's no proof.  Nobody has any notes as to

> what was submitted to the grand jury; and so, we are at a situation
> where we ultimately arrive at a variance and an amendment and also
> his right to have his case presented to and indicted by a grand jury
> before he goes to trial; and based on that, Judge, that's my Motion to
> Quash.

(Addendum 5, p. 16).

In response, the state argued that the counts of the indictment alleging especially aggravated sexual exploitation of a minor, all of which were identical in their language, properly alleged the crimes against which the defendant would have to defend himself. The state maintained that indictment was such that the defendant "won't be charged with other photographs during that period of time that he might have subsequent jeopardy on; and we're satisfied when we file a Bill of Particulars on that matter." (Addendum 5, p. 17). The state also argued that it was improper to question the evidence submitted to a grand jury.

The trial court refused to quash the indictment, explaining that " . . he's [the defendant has] been shown the photographs, more than that were indicated by the indictment and the grand jury is not required to indict on every single one . . . . But he knows what the pictures are, what the dates are, what the situation is, the defendant is not going to be surprised here. He knows exactly what's coming down; and what he is charged with, all 22 separate counts." (Addendum 5, p. 26). The trial court noted that there was no danger of double jeopardy because "once the state goes to trial on these pictures that happened between July 1 of 2004 and September 31 of 2004, he can no longer be prosecuted for any picture that was developed during that time period." (*Id.*)[5] Acknowledging that "it is sad and somewhat distressed [sic] at the way it [the indictment] is presented," the trial court

---

[5] The indictment originally limited the time of the offenses from July 1, 2004 to September 31, 2004; however, the incorrect ending date was amended at trial to reflect a date of September 30, 2004.

nonetheless held that the indictment "meets the test." (*Id*. at p. 27).

On direct appeal of his convictions, the defendant argued that the trial court erred in refusing the quash the indictment. In reviewing the petitioner's claim that the trial court should have quashed the indictment where the grand jury might not have specified the particular photograph attached to each count of especially aggravated sexual exploitation of a minor, the appellate court found:

> The fact that the indictment limited the dates protected Defendant from double jeopardy. Once the trial began, Defendant could not be prosecuted for any other photographs created in this time period. Further, the language of the indictment clearly informed Defendant of what he has being charged with in that it quoted Tennessee Code Annotated section 39-17-1005. Accordingly, Defendant is not entitled to relief on this issue.

2009 WL 1181349, at *12.

Generally, an indictment is sufficient if it satisfies a two-part test: "first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992); *United States v. Craft*, 105 F.3d 1123, 1126-27 (6th Cir. 1997)(finding an indictment valid if it embraces the essential elements of the crimes

charged, adequately apprises the defendant of the charges so that the defendant may intelligently prepare his or her defense, and provides protection against future prosecutions).

In assessing the impact of a variance between proof and an indictment, "[t]he true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as

to 'affect the substantial rights' of the accused." *Berger v. United States*, 295 U.S. 78, 82 (1935); *Geboy v. Brigano*, 489 F.3d 752, 764 (6th Cir. 2007). In the Sixth Circuit, a "variance is not to be regarded as material where it is not of a character which could have misled the defendant at trial, or where it involves no element of surprise prejudicial to the efforts of the defendant to prepare his defense, or where it does not affect substantial rights." *United States v. Mills*, 366 F.2d 512, 514 (6th Cir. 1966); *Geboy*,, 489 F.3d 752, 764. In other words, a legally significant variance "occurs when the proof introduced at trial differs materially from the facts alleged in the indictment." *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978).

Here, the petitioner has not demonstrated that he was surprised or misled regarding the nature of the charges against him. Nor has the defendant shown that any of his substantial rights were affected by virtue of a variance, if a variance even occurred. The dates of the indictment assured that the defendant could not be charged with other photographs during that period of time, even if other such photographs or "smoking guns" were discovered after the indictment. The petitioner does not deny that the images were sent within the time frame alleged in the indictment. Neither does the petitioner assert that the grand jury had before it insufficient evidence on which to indict. "[U]nnecessary pre-trial dissection by the court of the evidence before the grand jury would frequently result in costly and inadvisable delay . . . ." *U.S. v. Nelson*, 486 F. Supp. 464, 475 (W.D. Mich. 1980). As explained further by the United States Supreme Court:

> If indictments were to be held open to challenge on the grounds that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a

> prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits.  The Fifth Amendment requires nothing more.

*Costello v. United States*, 350 U.S. 359, 363 (1956).   In light of this, and absent a showing of greater, fundamental prejudice, the court finds that the appellate court's decision upholding the trial court's refusal to quash the indictment was not contrary to or an unreasonable application of federal law, nor was it unreasonable in light of the facts presented at trial.

### 3.      No Certificate of Appealability shall issue as to ground four.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's fourth ground for relief.

## E.      Consecutive Sentencing (Ground Five)

As the fifth and final ground raised in his *habeas* petition, the petitioner argues that the trial court erred in sentencing him consecutively.  (Docket No. 1 at p. 29).

### 1.      Exhaustion

The respondent concedes that the petitioner has exhausted this claim.  (Docket No. 10 at p. 11).

### 2.      Merits

The trial court imposed consecutive sentences on the petitioner pursuant to subsection 5 of

29

Tennessee Code Annotated § 40-35-115(b), which provides for consecutive sentencing in the discretion of the trial judge when:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

In imposing consecutive sentences, the trial judge stated, " . . . there are obviously numerous convictions here. Also two or more of these offenses involve sexual abuse of a minor; and I do find that this activity would fit within the definition under the sentencing of sexual abuse . . . ." (Addendum 9, Docket No. 13-9, p. 98). The petitioner argued on direct appeal and argues now that the offenses of which he was convicted do not constitute "sexual abuse of a minor" and, therefore, consecutive sentencing under Tennessee Code Annotated § 40-35-115(b) was improper. (Docket No. 1 at p. 29). The Court of Criminal Appeals addressed the petitioner's argument:

> An extensive search of Tennessee case law has revealed neither a case on this specific issue nor a definition of "sexual abuse" in the definitions of the criminal acts context. Although this Court is left without a clear statutory definition of "sexual abuse" in the criminal context, the definition of child sexual abuse under [Tenn. Code Ann. §] 37-1-602(3)(B) (emphasis added), which covers juvenile courts and proceedings, reads as follows: "Child sexual abuse" also means the commission of any act involving the unlawful sexual abuse, molestation, fondling or carnal knowledge of a child under thirteen (13) years of age that on or after November 1, 1989, constituted the criminal offense of:
>
> (i) Aggravated rape under § 39-13-502;
>
> (ii) Aggravated sexual battery under § 39-13-504;

(iii) Aggravated sexual exploitation of a minor under § 39-17-1004; or

(iv) Criminal attempt as provided in § 39-12-101 for any of the offenses listed above;

**(v) Especially aggravated sexual exploitation of a minor under § 39-17-1005;**

(vi) Incest under § 39-15-302; (vii) Rape under § 39-13-503;

(viii) Sexual battery under § 39-13-505;

(ix) Sexual exploitation of a minor under § 39-17-1003 . . . (emphasis added).

Based on the above authority, we agree with the State that especially aggravated sexual exploitation of a minor does qualify as sexual abuse.

Now we must determine whether the trial court abused its discretion by ordering that some of Defendant's convictions run consecutively. The record shows that there were aggravating circumstances arising from the relationship between Defendant and the victim, and that there was a long period of undetected sexual activity. Defendant was in his fifties when he contacted the thirteen-year-old victim, and they began chatting online in May or June of 2002. A romantic relationship began in May of 2003. Defendant pretended to be sixteen years old, and he used several screen names and e-mail addresses. From this, it can be inferred that Defendant was planning and carrying out his criminal acts from his initial contact with the victim. When the victim was fifteen, the relationship turned sexual, and she and Defendant had numerous sexual conversations both online and by telephone. Defendant told the victim that he loved her and asked her to mimic certain pictures of child pornography and send them to him, and in July of 2004, he instructed the victim to take a photograph of herself while inserting a hairbrush into her vagina. The victim testified the Defendant told her when you love someone you send these types of pictures to them. At some point, Defendant instructed the victim to buy a "pin camera," and he also sent the victim a web cam to attach to her computer, and she performed sexual acts for him through the camera. There was testimony that Defendant threatened the victim when she learned his true age and attempted to end her relationship with him. Although there was no

physical harm to the victim, evidence presented at the sentencing hearing indicated that the victim was afraid that Defendant would kill her or her family, she had nightmares, trouble sleeping, and stomach discomfort from her relationship with Defendant and the threats that he made when she attempted to end their relationship.

After a thorough review of the evidence from the sentencing hearing, the relevant statute, and case law, we conclude that consecutive sentences are authorized in this case and that the trial court did not abuse its discretion in ordering the sentences in Counts 2 and 7 to be served consecutively.

Defendant also argues that as an accomplice, E.B. could not also qualify as a victim as a basis for consecutive sentencing. However, this argument is without merit. In *State v. McKnight*, 900 S.W.2d 36, 47-49 (Tenn. Crim. App. 1994), this Court describes the minor victims of sexual offenses as both victims and accomplices. In particular, this court held that "[e]ach of these victims qualified as accomplices to these offenses." *Id.* at 48.

*State v. Burda*, 2009 WL 1181349 at * 15-17. (Addendum 16.)

Then and now, Mr. Burda essentially argues that the trial and appellate courts violated his right to due process by failing to apply state law properly. However, a petition for federal *habeas corpus* relief may only be granted when it is found that a citizen is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Because federal *habeas corpus* relief is only available to remedy errors of a federal nature, a claim that a conviction is the result of a state court's misapplication of state law is not cognizable unless the petitioner can establish such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998); *see Abshear v. Moore*, 354 Fed. Appx. 964, 968 (6th Cir. 2009)(federal *habeas corpus* relief does not lie for errors of state law).

Here, the state court determined that the defendant's actions constituted "sexual abuse" under Tennessee Code Annotated § 40-35-115(b) and thus sentenced the defendant to serve Counts 2 and 7 consecutively. Because the court must accept as valid the Tennessee court's interpretation of Tennessee statutes and rules of practice, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and the petitioner has not shown how the state court's ruling constituted a fundamental miscarriage of justice or deprived petitioner of the right to due process under the United States Constitution, this claim raises no issue on which *habeas corpus* relief may be granted.

### 3.     No Certificate of Appealability shall issue as to ground five.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's fifth ground for relief.

## IV.     CONCLUSION

Accordingly, as to grounds two through five, the petition is hereby **DENIED**. Rule 4, Rules - - - § 2254 Cases. Those claims are **DISMISSED** with prejudice, and a certificate of appealability will not issue as to any of those claims.

However, as to ground one, the court will consider the merits of the petitioner's judicial misconduct claim upon receipt of the respondent's brief and any reply by the petitioner to the respondent's brief.

An appropriate order will enter.

Todd J. Campbell
United States District Judge