# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN BURDA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:10-cv-00985 |
| | ) | Judge Sharp |
| DAVID SEXTON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

# M E M O R A N D U M

## I.  INTRODUCTION AND PROCEDURAL HISTORY

The petitioner, John Burda,[1] filed a *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2254.  (Docket No. 1).  The petitioner is an inmate at the Northeastern Correctional Complex (NECX) in Mountain City, Tennessee.  The petitioner challenges the legality of his confinement under an August 2, 2006, judgment of the Dickson County Circuit Court convicting him of one count of solicitation of a minor and twenty-one counts of especially aggravated sexual exploitation of a minor. (Addendum 8, pp. 692-94).[2]  At a sentencing hearing conducted on August 30, 2006, the trial court merged the twenty-one convictions of especially aggravated sexual exploitation into seven counts and sentenced the defendant to an effective term of twenty-two years. (Addendum 9, pp. 96-97, 102).

---

[1]  Throughout this memorandum, John Burda is referred to as "petitioner," "defendant," and "appellant" interchangeably.

[2]  The citations herein are to the technical record filed by the respondent. (Docket No. 13). Addenda Nos. 11-13 were filed manually by the respondent due to their graphic content.  (*See* Docket Annotation 1/18/2011).

1

On May 4, 2009, the Tennessee Court of Criminal Appeals affirmed the defendant's convictions but reduced the sentences and remanded the case for corrected judgments reflecting a total effective sentence of sixteen years. *State v. John Jason Burda*, No. M2006-02523-CCA-R3-CD, 2009 WL 1181349 (Tenn. Crim. App. May 4, 2009); Addendum 16. The Tennessee Supreme Court denied the petitioner's application for permission to appeal on November 23, 2009. *Id.*

On October 18, 2010, the petitioner filed a timely *pro se* petition for a writ of *habeas corpus* in this court. (Docket No. 1). In his petition, the petitioner asserts five grounds for relief. (Docket No. 1 at p. 5). Ground one alleges that the petitioner did not receive a fair trial because the trial judge engaged in judicial misconduct and demonstrated bias against the petitioner. Ground two alleges that the petitioner's conviction was obtained through the use of perjured testimony. Ground three alleges that the evidence was insufficient to support his convictions. Ground four alleges that the petitioner's convictions were obtained by an invalid indictment. Ground five alleges that the trial court erred in sentencing the petitioner consecutively. The petitioner names David Sexton, the warden of NECX, as the respondent.

By order and accompanying memorandum entered on March 9, 2011, the court dismissed grounds two through five of the petition, finding that the petitioner was not entitled to *habeas corpus* relief on any of these claims. (Docket Nos. 25 and 26). The court also determined that a certificate of appealability would not issue as to any of those claims. (*Id.*)

However, as to ground one of the petition, notwithstanding the respondent's arguments to the contrary (Docket No. 10 at pp. 7-9), the court found that the petitioner had satisfied the exhaustion requirement of his judicial misconduct and bias claim with respect to the theory that the trial judge improperly intervened in the petitioner's trial. (Docket No. 25 at pp. 9-10). The court

2

further found that the petitioner's allegations set forth in ground one of his petition for *habeas corpus* relief state a colorable claim of judicial misconduct. (*Id.* at p. 12). Noting that the respondent had not submitted argument with regard to the merits of ground one, the court directed the respondent to fully brief the merits of the judicial misconduct claim. (*Id.*) The court indicated that it would consider the merits of the petitioner's remaining claim upon receipt of the respondent's brief and any reply by the petitioner.

The respondent now has filed its response to the petitioner's judicial misconduct claim (Docket No. 32), and the petitioner has filed a reply to that response (Docket No. 44). Also pending are the following motions: a motion to dismiss by the respondent (Docket No. 9), two motions for sanctions (Docket Nos. 30 and 31) by the petitioner, and a motion for a citation of criminal contempt (Docket No. 45), also by the petitioner.

Upon consideration of the record, the court concludes that an evidentiary hearing is not needed as to ground one of the petitioner's *habeas* petition. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Therefore, the court shall dispose of the remaining claim as the law and justice requires. Rule 8(a), Rules — § 2254 Cases.

As noted by the court in its prior memorandum (Docket No. 25 at p. 3), jurisdiction and venue in this court are appropriate under 28 U.S.C. § 2241(d) because the petitioner was convicted in the Circuit Court of Dickson County, Tennessee.

## II.    FACTS PERTINENT TO GROUND ONE OF THE PETITION

In its prior memorandum, the court set forth a lengthy recitation of the underlying facts of the petitioner's criminal convictions. (Docket No. 25 at pp. 3-6). Those facts are incorporated by

reference herein.

The circumstances underlying the petitioner's claim of judicial misconduct occurred near the conclusion of the petitioner's state court trial and are as follows: The State's last witness in its case in chief at trial was Buddy Tidwell, who described himself as "a criminal investigator for the District Attorney General; and [ ] a Computer Forensic Examiner assigned to the Joint Computer Forensic Lab." (Doc. 13-8, p. 18.) Mr. Tidwell testified regarding a raid conducted on the petitioner's residence and various pieces of evidence seized pursuant to a search warrant. (Doc. 13-8, pp. 20-26.) Mr. Tidwell explained the function of different types of computer equipment and how information is stored and accessed. (Doc. 13-8, pp. 26-32.) He then explained that various files were taken from the petitioner's computer, which were identified with three separate dates: a creation date, modification date and access date. (Doc. 13-8, pp. 33-34.) Mr. Tidwell testified that the creation date of a file was the best evidence available to show when the file was received by the petitioner. (Doc. 13-8, pp. 35-37.) Then, Mr. Tidwell verified that the creation dates of the various files seized corresponded to the Bill of Particulars/List of Indictment Counts, admitted as Exhibit 51. (Doc. 13-8, p. 37.)

Mr. Tidwell then testified about when contact was made between the petitioner and E.B.[3] and the screen names which appeared from the petitioner's computer. (Doc. 13-8, pp. 37-40, 44-48.) Mr. Tidwell then identified various photographs accessed from the petitioner's computer and other files containing chat logs and e-mails. (Doc. 13-8, pp. 48-52.)

---

[3] This court, as did the state courts, will refer to the victim/accomplice by her initials because she was a minor at the time of the alleged events. The court also will refer to E.B. as "victim/accomplice" because the trial court determined that, as a matter of law, E.B. was both victim and accomplice to the defendant's crimes. Although the Tennessee Court of Appeals did not consider the matter directly, the court referred to E.B. as both victim and accomplice throughout its opinion. *See State v. Burda*, 2009 WL 1181349, at **10-11 (Tenn. Crim. App. May 4, 2009).

4

On cross-examination, Mr. Tidwell testified about the appearance of E.B.'s screen name on the petitioner's computer and responded to questions about whether E.B. might have committed any criminal offenses based on the evidence seized from the petitioner's computer. (Docket No. 13-8, pp. 52-54.) Mr. Tidwell then responded to numerous questions regarding the connection of picture files to messages on the petitioner's computer. (Docket No. 13-8, pp. 55-67.)

On redirect, Mr. Tidwell explained how both the petitioner and E.B. used different screen names to communicate at different times. (Docket No. 13-8, pp. 67-68.) On re-cross, Mr. Tidwell responded further to questions about the use of screen names by E.B. and the petitioner. (Docket No. 13-8, pp. 68-70.)

After the petitioner's counsel concluded his questions on re-cross-examination, the State indicated "[n]o further questions." (Docket No. 13-8, p. 70.) The court then asked "Is that all of your witnesses?" to which the State responded affirmatively. (*Id.*) The court sent the jury to lunch, then addressed a question to the attorneys:

> Gentlemen, one of the things that I see [the petitioner's counsel] keying in on and obviously I didn't know the status of the proof in this case, is the fact that multiple pictures may have been sent in what is essentially the same transmission, the same dialogue, the same chat session; and that may constitute a single event.
>
> If that is true, if more than one picture is sent in a single event, then you may only be allowed one conviction on that event; and I'm wondering if there is sufficient evidence in the record, as it now exists, to determine that?
>
> Yeah, I'm open to whoever [sic] wants to throw in at this point.

(Docket No. 13-8, pp. 70-71.)

The court sought to resolve whether the images transmitted and received were bundled together to constitute a number of offenses fewer than the total number of images, as suggested by

the Bill of Particulars. The court explained:

> Let me give an illustration. I'm just picking numbers out of the air. The pictures which are the subject of Counts 2, 3, and 4 of the indictment were transmitted by the alleged victim to the defendant during the same chat session, okay. My concern is that that is a single act and could only sustain one conviction for the 3 pictures.

(Docket No. 13-8, p. 74.) After some discussion with counsel, the court determined that there could be a maximum of six convictions since the pictures were all transmitted on no more than six dates, but he then addressed another concern:

> I'm not entirely comfortable with the conclusion that because a creation date, for example, Counts 2, 3, and 4--creation dates were July 23rd, 2004, in each of Counts 2, 3, and 4. I'm not entirely comfortable with the logical proposition that that meant those 3 pictures were actually transmitted to the defendant on July 23rd of 2004.
>
> See that's the problem I'm having. I like your approach, you know, [we] have 6 dates so it's clear, it's simple; and I really like the approach that there are 6 different dates, can be a maximum of 6 convictions. The problem with that is that that assumes that these files were transmitted on that date; and it does not necessarily mean -- it may well mean it; but it doesn't necessarily mean that. That's what is bothering me about that.

(Docket No. 13-8, pp. 75-76.)

The court then discussed the issue regarding when the petitioner actually received the transmitted images on his computer, and the petitioner's counsel argued that because the State could not prove that the creation dates of the files were not second-hand, *i.e.*, the result of a re-creation of the file from another previously transmitted file, the State could not establish that the files were first received by the defendant within the dates of the indictment. (Docket No. 13-8, pp. 76-81.) After all that discussion, the trial judge came to a realization that his earlier analysis had been incorrect:

> THE COURT:  Hang on a second. Occasionally it is useful to look

6

at the law. The crime with which the defendant is charged in Counts 2 through 24 is especially aggravated sexual exploitation of a minor. The element -- the first element of that crime that matches the indictment is that the defendant did promote, employ, use, assist, transport or permit a minor to participate in the performance or in the production of material which includes the minor engaging in sexual activity. The operative date is not the date that the defendant received the picture. The operative date is the date that the picture was produced by [E.B.'s] computer. So we're doing a lot of hashing around here at the wrong end of the transaction.

The actual [gravamen] of the offense in our [case] is the production of the material. When the material was produced in North Carolina the crime was committed because it was produced for transmission to this state.

**Now you know, some of the other lesser included offenses may be different but we've got to go with what is indicted -- with the indicted offense; and I'm not sure that the status of the proof, at this point, is sufficient for the jury to find when it was produced.**

Now admittedly the chat logs are probably going to show that; and I have not read the chat-- I've scanned some of them; and it could be included in the chat logs; **but I'm sharing with you my concerns before the state rests so that we can solve that problem if it is solvable; and if not, we'll just deal with it otherwise.** All right.

Anything further?

[COUNSEL]: No, Judge. I was under the impression the state had already rested.

[THE STATE]: No we have not.

THE COURT: No they have not. **I specifically acted so they would not. I wanted to leave it open so if they want to present something else, they can**; and I'm going to leave the proof open during lunch; and come back -- what did I say, 1:30 or 1:15?

(Docket No. 13-8, pp. 81-82)(emphasis added).

When the court resumed proceedings, the State recalled Mr. Tidwell as a witness:

[THE STATE]: . . . We're going to move to reopen the proof and put

7

on Mr. Tidwell.

THE COURT: Well, you want to move to recall. You haven't closed your proof.

[THE STATE]: I want to recall Mr. Tidwell.

THE COURT: All right. Is there an objection to that?

[COUNSEL]: There is, Judge. He has testified and we've crossed and based on what his testimony was and I think the Court may have pointed out some issues that appear to be problems with the case. They didn't establish that. I think it is prejudicial to the defendant to allow them to reopen the case; and so --

THE COURT: So it's within my discretion, I'll allow the reopen. Ready for the jury?

(Docket No. 13-8, pp. 85-86.)   Mr. Tidwell then was recalled as a witness and testified that of the twenty-three (23) images identified in the indictment, ten (10) of the files were in existence on E.B.'s computer, although they could have different creation dates than shown on the petitioner's computer. (Docket No. 13-8, p. 87.) Mr. Tidwell then explained why the dates might be different and noted the different dates for the same file on the E.B.'s computer and the petitioner's computer. (Docket No. 13-8, pp. 88-90.)   In the course of his testimony on recall, Mr. Tidwell produced Exhibit 53, which listed several images with dates of their creation on E.B.'s computer. (Addendum 13, p. 53.)   Counts Five and Six, the images thereunder having been shown to have been created outside the parameters of the indictment, were later dismissed. (Docket No. 13-8, pp. 113-15.)

## III.    ANALYSIS OF GROUND ONE OF PETITION (JUDICIAL MISCONDUCT AND BIAS)

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996),  provides the following with respect

to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002). However, where, as here, the state courts not did assess the merits of a claim properly raised in a *habeas* petition, the deference due under the AEDPA does not apply, and the district court is obliged to resolve the claim *de novo* in addressing its merits. *See Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 3003); *Williams v. Coyle,* 260 F.3d 684, 706 (6th Cir. 2001).

As ground one of his petition for *habeas corpus* relief, the petitioner generally contends that he was denied a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution because the trial court judge was biased against him and engaged in judicial misconduct. More specifically, the petitioner alleges that the trial judge improperly assumed the role of prosecutor, intervening during the course of the trial to ensure that the state adequately had

9

proved its case.   In submissions filed subsequent to the petition for writ of *habeas corpus* (Docket Nos. 31 and 45), the petitioner further develops the theory raised in his ground one of the petition and alleges additionally that the trial court judge allowed the use of perjury and false evidence by the prosecuting attorney to obtain the petitioner's conviction.

The Due Process Clause of the Fourteenth Amendment requires a fair trial tribunal before a judge with no actual bias against a defendant or an interest in the outcome of the case. *Burnett v. Bell*, No. 2:08-cv-11901, 2010 WL 2089335, at *6 (E.D. Mich. May 24, 2010)(citing *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)).   There are two types of judicial misconduct claims.  The first type is "judicial bias" stemming  from a trial judge's personal interest in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties.  *Id*. (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).  That type of judicial misconduct or bias is not alleged here.  The second type concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which strongly suggests that the judge believes the defense or favors the prosecution.  *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).  This is the type of claim alleged by the petitioner in ground one of his *habeas corpus* petition.

To violate a defendant's right to a fair proceeding, the judge's intervention in the case must be "significant and detrimental to the defendant to a substantial degree."  *Burnett*, 2010 WL 2089335, at *6 (citing *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985)).  However, "[t]here is no general prohibition against a trial court commenting upon the evidence."  *McBee v*, 763 F.2d at 817 (citing *Quercia v. United States*, 289 U.S. 466, 469 (1933)).  "'Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects

for collateral attack on a conviction.'" *Id.* at 818 (quoting *Brinlee v. Crisp*, 608 F.2d 839, 853 (10th Cir. 1979)). In collateral proceedings such as the instant case, the test is "'whether the errors alleged . . . could have rendered [the] trial fundamentally unfair.'" *Id.* (quoting *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978)). Stated differently, "[j]udicial opinions will only support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

The respondent alleges that the petitioner failed to exhaust the petitioner's judicial misconduct and bias claim in the state courts. (Docket No. 32 at pp. 9-11). However, the court already has evaluated the respondent's argument with regard to exhaustion and determined that the petitioner has exhausted his claim that the trial judge improperly intervened in the petitioner's trial. (Docket No. 25 at pp. 7-10). In any event, the respondent posits that, even if the petitioner has exhausted all theories underlying his claim of judicial misconduct and bias, the trial court judge's actions did not violate the petitioner's right to a fair trial or to any clearly established federal law. Thus, argues the respondent, no *habeas corpus* relief is appropriate. (Docket No. 32 at pp. 12-14).

## A.    Judicial Misconduct By Allowing Use of Perjury and False Evidence

First, the petitioner alleges that the trial judge committed judicial misconduct by allowing the use of perjury and false evidence during the petitioner's pre-trial hearings and trial. To the extent that, in ground one of his petition, the petitioner is attempting to relitigate claims related to E.B.'s alleged perjury (raised in ground two of his petition), the court previously found that the petitioner had not exhausted that claim. (Docket No. 25 at pp. 12-16). The court further found that, even if the petitioner could establish cause for his procedural default of this claim, the petitioner cannot establish prejudice as to the claim. (*Id.*) The court will not revisit those findings herein.

11

The petitioner also alleges judicial bias or misconduct based on rulings by the trial judge related to the issuance of the search warrant and the petitioner's motion to suppress. The petitioner alleges that "the trial court judge, who is the same judge that issued the search warrant and presided over the suppression hearing on the search warrant, allowed perjurious/false testimony from the affiant for the search warrant, Agent Craig of the T.B.I., in the form of false testimony that a 'package' had been delivered/sent to petitioner to bolster the lack of particularity of the search warrant as to whether petitioner lived in the house that was actually searched." (Docket No. 1 at pp. 6-B and 6-C).

The petitioner raised issues related to Agent Craig's testimony and the issuance of the search warrant in Issues I and II of his appellate brief to the Tennessee Court of Criminal Appeals. (Docket No. 13-11, Addendum 14 at p. 7). The petitioner raised these issues in the context of argument that his motion to suppress should have been granted and the evidence seized from the defendant's home suppressed due to a lack of probable cause to search the defendant's residence. (*Id.* at pp. 17-30). At no point, however, in his appellate brief did the appellant specifically or even generally allege that the trial judge's bias or misconduct as manifested in pre-trial and trial rulings concerning the search warrant and Agent Craig's testimony deprived the petitioner of a fair trial.[4] As such, the court cannot find that the petitioner has fully and fairly presented this particular federal claim to the state courts for consideration; the claim, then, has not been properly exhausted.

Since the state court remedies for this claim are no longer available, *Tenn. Code Ann.* § 40-

---

[4] As the Tennessee Court of Criminals summarized: "Defendant argues that his pre-trial motion to suppress should have been granted because the affidavit lacked the particularity requirement of the place to be searched, that there was no logical nexus between the statements given by the minor and the belief of the officers that evidence would be found in Defendant's home, that the information was stale by the time the search warrant was issued, and that the victim was an accomplice and therefore her credibility is subjected to a higher standard." 2009 WL 1181349, at *4.

Case 3:10-cv-00985   Document 47   Filed 02/03/12   Page 12 of 23 PageID #: 2015

30-102(a) and (c), by way of procedural default, the petitioner technically has met the exhaustion requirement with respect to this claim. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). The exhaustion of a claim via procedural default does not, however, automatically entitle a *habeas* petitioner to federal review of that claim. To prevent a *federal habeas* petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

A *habeas* petitioner cannot rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. *Brooks v. Tenn.*, 626 F.3d 878, 890 (6th Cir. 2010).

In his response to the respondent's motion to dismiss his *habeas corpus* petition, the petitioner points to his attorney's failure to follow his directions as the reason or "cause" for the petitioner's failure to exhaust his claims in the state courts. The petitioner claims that he "wrote numerous letters to his defense and appellate counsel regarding the . . . use of perjurious/false evidence . . . . There was not even one response from appellate counsel as to these letters. Petitioner clearly expressed his concern as to whether these issues were adequately developed to the state

13

courts. Petitioner cited numerous federal and state citations of law on the topics." (Docket No. 15 at p.15). The petitioner argues that, if the court determines that a procedural bar exists to any of his claims, his counsel is responsible for the default, and the court should not punish the petitioner for his attorney's error. (*Id*. at pp. 15-16).

Even assuming *arguendo* that the petitioner has established cause, the court finds that the petitioner cannot establish prejudice as to this claim. The petitioner alleges that the prosecutor knowingly used, and the trial judge knowingly allowed, perjured testimony by Agent Craig to support the issuance of a warrant to search the defendant's residence and, ultimately, to obtain the petitioner's convictions. In particular, the petitioner alleges that Agent Craig testified at the suppression hearing that he believed that Investigator Tidwell had "dropped off a package to him [John Burda] at the residence in question and that this testimony was never verified by Investigator Tidwell during the suppression hearing.

To prevail on a due process claim that a conviction was obtained by evidence that the government knew or should have known to be false, a *habeas* petitioner must show that the witness's statements were "indisputably false," that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or changes his story does not establish perjury. *Monroe v. Smith*, 197 F. Supp.2d 753, 762 (E.D. Mich. 2001).

Here, there is no evidence that the testimony challenged by the petitioner was untruthful testimony. That there may have been no corroborating evidence offered in support of Agent Craig's

sworn testimony that Investigator Tidwell had dropped off a package at the Burda residence is insufficient to establish the knowing use of perjured testimony by the prosecution. It is also insufficient to establish that the trial judge allowed the use of perjured testimony to support the issuance of the Burda search warrant or the conviction of the defendant.

Likewise, the petitioner has not shown that Agent Craig's alleged perjured statement regarding the package infected the petitioner's trial with constitutional error so as to establish prejudice sufficient to overcome the petitioner's procedural default. In evaluating the trial judge's decision to deny the defendant's motion to suppress based on the issuance of the search warrant, the Tennessee Court of Criminal Appeals noted that Agent Craig testified that he personally had examined utility and E911 information in order to determine where the defendant lived and had driven to the location and determined that 44443 Highway 70 West was, in fact, the residence of the defendant. Coupled with the appellate court's finding that the affidavit described with particularity the place to be searched, Agent Craig's testimony–excluding mention of any package delivered by Investigator Tidwell–supported the issuance and execution of the search warrant. Thus, the court did not even rely on testimony by Agent Craig regarding the delivery of a package in order to find that the search warrant was supported by probable cause; no prejudice therefore has been shown. Consequently, the petitioner is not entitled to *habeas corpus* relief under this theory of his judicial misconduct claim.

**B.      Judicial Misconduct Due to Improper Intervention by Trial Judge**

The heart of the petitioner's judicial misconduct claim pertains to the judge's conduct near the end of the petitioner's trial. The petitioner alleges that he was denied a fair trial:

> because there was a breakdown of the adversarial nature of the trial
> mechanism, or trial process[,] by the actions of the trial court judge

15

> in stopping the trial process, stopping the state from closing its proof, ruling in substance that the evidence was insufficient to convict, then allowing the state to continue, acting as a surrogate prosecutor to point the 'holes' or defects in the state's case, allowing the state to call additional witnesses after it was ready to close its proof . . . .

(Docket No. 15 at p. 14). The petitioner alleges that the trial judge's intervention was both significant and detrimental, rendering the petitioner's trial in Dickson County Court "fundamentally unfair." This allegation is the focus of the respondent's attention in its court-ordered response to the merits of the petitioner's judicial misconduct claim.

The circumstances underlying this claim occurred near the conclusion of the petitioner's state court trial. After the petitioner's counsel concluded his questions on re-cross-examination, the State indicated "[n]o further questions." (Docket No. 13-8, p. 70). The trial judge then asked "Is that all of your witnesses?" to which the State responded affirmatively. (*Id.*) The judge sent the jury to lunch then voiced concerns to the attorneys regarding the multiplicity of the charges against the defendant. The judge questioned whether images listed in the Bill of Particulars, as fitted to the various charges, were transmitted in groupings, which would reduce the number of offenses for which the defendant could be punished. The judge also questioned whether the operative dates were the dates the victim/accomplice created the images or the dates the images were transmitted to the defendant, ultimately finding that the crux of the offense was when the material was produced and that the prosecution may not have put on sufficient proof toward that point. He went on to say that "I'm sharing with you my concerns before the state rests so that we can solve that problem if it is solvable. . . ." (Docket No. 13-8, pp. 81-82). When the court resumed proceedings, the State recalled Mr. Tidwell as a witness:

> [THE STATE]: . . . We're going to move to reopen the proof and put on Mr. Tidwell.

16

THE COURT: Well, you want to move to recall. You haven't closed your proof.

[THE STATE]: I want to recall Mr. Tidwell.

THE COURT: All right. Is there an objection to that?

[COUNSEL]: There is, Judge. He has testified and we've crossed and based on what his testimony was and I think the Court may have pointed out some issues that appear to be problems with the case. They didn't establish that. I think it is prejudicial to the defendant to allow them to reopen the case; and so --

THE COURT: So it's within my discretion, I'll allow the reopen. Ready for the jury?

(Docket No. 13-8, pp. 85-86.) Based on the above exchange, the petitioner contends that the trial judge acted improperly by pointing out the deficiencies in the state's case after the state had rested and then allowing the state to reopen its proof for purposes of curing the deficiencies by re-examining Agent Tidwell.

Prior to the trial judge sending the jury to lunch, the state had not rested its case nor closed its proof. Although the prosecuting attorney indicated that he had called all of his witnesses, he did not explicitly state that he was resting or closing his proof. Moreover, even if the prosecutor had rested, under certain circumstances he would have been permitted to reopen his proof for purposing of putting on additional evidence. *See e.g., United States v. Doe,* 572 F.3d 1162, 1172 (10th Cir. 2009);[5] *United States v. Boone,* 437 F.3d 829, 836-37 (8th Cir. 2006)(internal citation omitted)("A

---

[5] In *Doe*, the prosecution rested and the defendant moved for a judgment of acquittal. After the district court found that "[t]here is no proof . . . . I think that there . . . has been no offense committed because there is an element missing," the prosecution requested an overnight continuance because it was "caught flat-footed." The district court then asked if the prosecution wanted to reopen. The prosecution responded that it wanted to reopen in the morning. When the prosecution moved to reopen the following morning, the district court granted the motion "in the interests of justice." In reviewing the district court's decision to allow the prosecution to reopen, the Tenth Circuit acknowledged that the defendant suffered some degree of

17

trial court may permit either side to reopen its case in chief, and we have previously characterized the discretion it exercises in doing so as 'wide.'"; *United States v. Gray,* 405 F.3d 227, 237-38 (4th Cir. 2005)("Where the district court properly permits the Government to reopen its case-in-chief, it cannot be said that the Government "closes its evidence" before the conclusion of its *reopened* case . . . . Under 29(b), the district court would be permitted to consider *all* of the evidence presented in the Government's case-in-chief–before and after the district court permitted reopening–when it ultimately rules on the Rule 29 motion.")(emphasis in original); *Gibson v. Mayor and Council of City of Wilmington,* 355 F.2d 215, 229 (3rd Cir. 2004)("A court's decision to reopen or supplement the record once deliberations have begun is reviewable only for abuse of discretion."); *United States v. Hinderman,* 625 F.2d 994, 996 (10th Cir. 1980)(even after a defendant moves under Federal Rule of Criminal Procedure 29 for acquittal, a district judge retains wide discretion to allow the government to reopen its case to correct errors "or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur." ). *But see also, Rivera-Flores v. P.R. Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995)("While the particular criteria that guide a trial court's decision to reopen are necessarily flexible and case-specific, it is generally understood that a trial court abuses its discretion if its [action] works an 'injustice' in the particular circumstances.").

There does not appear to be an injustice done in this particular circumstance. First, the discussion between the trial judge and the lawyers concerning the proof occurred outside of the presence of the jury. Thus, the jury did not observe any actions or hear any statements by the trial

---

prejudice. However, the Tenth Circuit found that it was the defendant who had raised the issues which supported the prosecution's motions to reopen and that there was no suggestion that the defendant was surprised. The Court noted that both the prosecution and defense received additional time to research the legal and factual aspects of the issues. As such, the Court concluded that the district court did not abuse its "wide discretion" by allowing the prosecution to reopen. 572 F.3d 1162, 1172.

judge that could have suggested his opinion one way or the other as to the defendant's guilt. And second, while it is true that the defense had to adapt to the prosecution's evolving assertions of which dates were relevant, the trial judge's operative date inquiry also resulted in undeniable advantages to the defendant. After hearing from both attorneys, the court determined that the offense of especially aggravated sexual exploitation of a minor did not lie in the receipt of the images by the defendant but in production of the images on the victim/accomplice's computer. (Docket No. 13-8 at pp. 81-82). Based on that determination, the court found that the images in Counts Five and Six were created outside the limits of the indictment, and those counts were dismissed. (Docket No. 13-8 at pp.113-15). Considering that the trial court ultimately ordered the defendant's sentences to run consecutively, the dismissal of two counts directly affected the length of the sentence imposed on the defendant.

As to the testimony of Agent Tidwell after the jury break, the witness was immediately recalled, minimizing prejudice to the defendant. Because the defense had not put on any witnesses, the testimony was no more detrimental than it otherwise would have been because of the order in which it was presented. Agent Tidwell's testimony was relevant, admissible, and helpful to the jury. Defense counsel had an opportunity to re-cross-examine him.

Most importantly, the circumstantial evidence on which the defendant ultimately was convicted had been introduced prior to the recall of Agent Tidwell. As the court found in its prior Memorandum denying grounds two-five of the petition for *habeas corpus* relief, the record contains multiple images of the victim in sexually explicit poses dated between July 13-24, 2004. (*See e.g.*, Addendum 11, Trial Exs. 15 (Count 7), 17 (Count 9), 19 (Count 11), 27 (Count 19), 30 (Count 22)). The record also contains hundreds of pages of transcribed chat log conversations occurring within

19

the time frame of the indictment in which the defendant *directly* requests or encourages E.B. to produce images of herself in sexually explicit poses. (Addendum 12, Ex. 40, pages 49-50). (Addendum 12, Ex. 46, page 2) (Addendum 12, Ex. 48)(pages not numbered in Exhibit). Other chat logs introduced into evidence during the defendant's trial show that the defendant also *indirectly* promoted the production of these images by complimenting E.B. when she sent such images, (Docket No. 13-7, pp. 81-82 of 267), which is consistent with the physical evidence in the case. (*Id*. at pp. 3-4); Addendum 12, Ex. 46, pp. 3-4. As the court reasoned in its prior Memorandum:

> It is clear that the defendant requested a number of sexually explicit pictures from E.B. within the time frame of the indictment. During this time, the defendant, who was actually in his fifties, led E.B. to believe he was a teenage boy. Regardless of whether E.B. created and sent some images to the defendant on certain dates without the defendant having specifically requested those images, it is also clear that the defendant did not object to the production or receipt of these images; indeed, he praised and complimented E.B., who was fifteen years old at the time, for taking the pictures and sending them to him. He encouraged E.B. to create and send more photographs. He suggested different sexually explicit poses. The court finds that the defendant's behavior over a period of years was designed to cultivate a relationship with this young woman for the purpose of manipulating her into creating and sending sexually explicit images to a grown man for his sexual gratification. As did the appellate court, this court finds that the defendant's actions, both direct and indirect, "knowingly promoted" the victim/accomplice's production of this material. Accordingly, the court determined that the appellate court properly applied the law and reasonably concluded that the evidence was sufficient such that a reasonable trier of fact could have found the defendant guilty of especially aggravated sexual exploitation of a child in Counts 2, 7, 9, 11, 19, and 22.

(Docket No. 25, Mem. Op. at pp. 23-24). Accordingly, the petitioner has failed to show any violation of his Constitutional rights and fails to show that the trial judge engaged in judicial misconduct or bias. The court finds that ground one does not support an award of *habeas corpus*

20

relief.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court finds that it is possible reasonable jurists could disagree as to the evaluation of the petitioner's judicial misconduct claim. Therefore a certificate of appealability **will issue** with respect to ground one of the petition.

## IV. MOTION DISPOSITION

Also pending are several motions, including the respondent's motion to dismiss (Docket No. 9), two motions for sanctions filed by the petitioner (Docket Nos. 30 and 31), and a motion for a citation of criminal contempt (Docket No. 45), also filed by the petitioner.

As recognized by the court in its order of June 2, 2011 (Docket No. 38), the court's order and accompanying memorandum entered on March 9, 2011 (Docket Nos. 25 and 26), effectively granted in part the respondent's motion to dismiss insofar as the court denied the petition for *habeas corpus* relief as to grounds two through five and dismissed those claims with prejudice. The respondent's motion was held in abeyance pending the court's resolution of the petitioner's remaining claim. As discussed herein, the petitioner's remaining claim is without merit. Therefore, for the reasons explained in Section III herein, the respondent's motion to dismiss (Docket No. 9) as to the petitioner's only remaining claim will be granted.

The petitioner's motions (Docket Nos. 30, 31, and 45)[6] pertain to the petitioner's allegations

---

[6] Docket Nos. 30 and 31 are essentially the same document.

21

of false evidence and perjured testimony used by the prosecution and allowed by the trial judge .

In Docket Nos. 30 and 31, the petitioner asks the court to impose sanctions against respondent's counsel for "unethical conduct" such as referring to "known perjurious/false" testimony of E.B. and Agent Craig in the respondent's written submissions to the court.    (Docket No. 31 at p. 2).  The petitioner also alleges that the trial prosecutor, respondent's counsel, the trial judge, E.B., and "law enforcement agents" have committed various unethical acts in violation of the petitioner's Constitutional rights and asks the court to set a hearing "to determine monetary damages which are available to petitioner."  (Docket No. 31 at p. 23).   In Docket No. 45, the petitioner seeks citations of criminal contempt against respondent's counsel, the Attorney General of the State of Tennessee, and Assistant Tennessee State Attorney General Brent C. Cherry.  The petitioner alleges that "law enforcement officers from the states of North Carolina and Tennessee engaged in purposed and concerted interstate unlawful activity and conduct to illegally, under both state and federal law . . . use evidence, false/perjurious evidence, and false/perjurious testimony to convict Petitioner unlawfully and, through respondent and respondent's counsel[,] to attempt cause Petitioner's continued unlawful incarceration . . . ."  (Docket No. 45 at p. 6).

In short, the petitioner seeks money damages and asks the court to order criminal investigations.  The type of relief sought by the petitioner by way of these motions (Docket Nos. 30, 31, and 45) is not available under 28 U.S.C. § 2254, the statute pursuant to which the petitioner has filed his petition for writ of *habeas corpus.*  Under  § 2254, the sole remedy that is available is the immediate or expedited release of a prisoner unconstitutionally convicted or sentenced.  *Preiser*, 411 U.S. at 493; *Jenkins v. Haubert,* 179 F.3d 19, 24 (2d Cir. 1999)(*habeas corpus*  does not provide for money damages).  Furthermore, private citizens such as the petitioner have no judicially cognizable

22

interest in the criminal prosecution of other citizens. *United States v. Armstrong*, 517 U.S. 456 (1996). The decision of what persons should be prosecuted are matters which the Constitution and Statutes of the United States have delegated to the Attorney General of the United States who, in turn, has delegated it to the United States Attorney and his counterparts in other judicial districts.[7] *Id.* Because § 2254 does not provide for the award of money damages and the court cannot initiate criminal prosecutions, the petitioner's motions will be denied.

## V.    CONCLUSION

Accordingly, as to ground one, the petition will be **DENIED**. Rule 4, Rules - - - § 2254 Cases. The petitioner's claim of judicial misconduct and bias will be **DISMISSED** with prejudice. However, a certificate of appealability **will issue** as to ground one.

The respondent's motion to dismiss (Docket No. 9) will be **GRANTED** as to the only remaining claim. The petitioner's motions (Docket Nos. 30, 31, and 45) will be **DENIED**.

An appropriate order will enter.

Kevin H. Sharp
United States District Judge

---

[7] Although the petitioner here alleges improper conduct by these various individuals, the court has determined that no evidence supports the petitioner's assertions.

23